UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COURTNEY LACROIX,

    **Plaintiff,**

 v.               **CASE NO:**

THE FOUNTAIN GROUP, LLC,

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, COURTNEY LACROIX, (hereinafter "Plaintiff" or "Ms. LaCroix"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, THE FOUNTAIN GROUP, LLC (hereinafter "Defendant," "The Fountain Group," or "Company") and alleges:

## INTRODUCTION

1.  The Plaintiff brings this action against Defendant, her current employer, seeking to recover damages for unlawful discrimination based on race and disability, failure to accommodate, failure to engage in the interactive process, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; the Americans with Disabilities Act of 1990, as

amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 et seq.; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.  As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race and disability, failed to provide reasonable accommodations for her disability, failed to engage in the interactive process, and retaliated against her in violation of her rights under Title VII, the ADA, and the FCRA.

3.  As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.  Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§

1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8. Plaintiff, COURTNEY LACROIX, is a 38-year-old Black/African American female who has been diagnosed with anxiety and depression, for which she has been prescribed Fluoxetine 40 mg and has been under the care of multiple mental health providers. Plaintiff's disability substantially limits

one or more major life activities. Plaintiff resides in Hillsborough County, Florida.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on her race and disability under Title VII, the ADA, and the FCRA.

10.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11.     At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII, the ADA, and the FCRA.

12.     The Defendant, THE FOUNTAIN GROUP, LLC, is a Foreign Limited Liability Company with a principal place of business located at 3407 W Dr Martin Luther King Jr Blvd, Suite 150, Tampa, Florida 33607.

13.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, where it employed Plaintiff as a Delivery Manager and later as a Senior Recruiter.

14.     At all times material herein, Defendant employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite, and

met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the ADA, and the FCRA.

15.    Accordingly, Defendant is liable under Title VII, the ADA, and the FCRA for the unlawful race and disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.    On March 20, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race and disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation.

18.    On April 29, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2025-02522) against Defendant.

19. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

20. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22. Plaintiff, COURTNEY LACROIX, is a 38-year-old Black/African American female.

23. Plaintiff has been diagnosed with anxiety and depression for more than two years prior to filing this action. Plaintiff's anxiety and depression substantially limit one or more major life activities, including but not limited to concentrating, sleeping, interacting with others, and regulating her emotions.

24. Plaintiff was prescribed Fluoxetine 40 mg by her treating

provider, Dr. Wendy Gallagher, for work-related depression and anxiety and has received ongoing treatment from therapists Jennifer Oliff and Angie Speller for anxiety and depression related to her work environment.

25.    On or about March 3, 2014, Plaintiff first began working for Defendant, THE FOUNTAIN GROUP, LLC, as a Recruiter. Plaintiff voluntarily resigned on April 21, 2016, and was rehired by Defendant on January 22, 2018, as a Senior Recruiter.

26.    During her tenure with Defendant, Plaintiff demonstrated strong performance and was repeatedly promoted. In or around April 2019, Plaintiff was promoted to Recruiting Team Lead. In or around February or March 2020, Plaintiff was promoted to Delivery Manager, a role she held until February 2025.

27.    In 2021, Plaintiff was recognized as "Delivery Manager of the Year." At the time of the adverse employment actions described herein, Plaintiff held the second-longest tenure among her peers at the company.

28.    During her employment as Delivery Manager, Plaintiff earned a base salary of approximately $45,000 per year, plus a commission structure that resulted in total annual compensation consistently ranging between approximately $130,000 and $155,000 per year.

29.    Plaintiff's commission structure was a material and integral component of her compensation package throughout her tenure as Delivery Manager.

30.    Since approximately 2022, Plaintiff reported directly to Brent Ward, Vice President of Client Management and Recruiting. Charity Hall served as Vice President of Operations and oversaw Human Resources during the relevant time period.

31.    Throughout her employment, and particularly during the period leading up to the events described herein, Plaintiff was required to work demanding hours, often from approximately 8:00 a.m. to 8:00 p.m., with great difficulty taking lunch breaks and with no rest periods provided.

32.    These demanding working conditions significantly contributed to the development and worsening of Plaintiff's work-related depression and anxiety. Plaintiff was open with leadership about the emotional toll her position was taking on her and disclosed to her supervisors that she was attending therapy due to workplace stress.

33.    On or about August 1, 2024, at approximately 12:00 p.m., Plaintiff attended a weekly check-in meeting with Josue Nunez, Training & Recruiting Specialist, to discuss team performance concerns and struggles.

34. During the August 1, 2024 meeting, Plaintiff raised legitimate concerns regarding a new hire, Crista Clayton, who had been brought in through Mr. Nunez's personal connections and had not received proper training.

35. The August 1, 2024 meeting became highly emotionally distressing for Plaintiff. At one point, Plaintiff stated, "fine, you do their searches then" and "I'm done," before walking out.

36. Shortly thereafter, Plaintiff experienced a panic attack directly related to her disability, rendering her unable to continue working that day.

37. On August 1, 2024, at approximately 12:56 p.m., Plaintiff emailed her supervisor, Brent Ward, informing him that she was taking the remainder of that day and the following day off due to her condition.

38. Plaintiff had pre-approved half-day PTO already scheduled for August 2, 2024, prior to the August 1, 2024 incident, as confirmed by calendar records reflecting "half day - out at 12pm." Plaintiff also had pre-approved PTO scheduled for Monday, August 5, 2024.

39. Plaintiff utilized these previously approved absences in conjunction with her disability-related need to recover from the August 1, 2024 panic attack.

40. On August 5, 2024, Plaintiff reached out to confirm that she would not be reporting to work that day, consistent with her pre-approved PTO.

41. During Plaintiff's absence for the week of August 5 through 9, 2024, a colleague known as Ana covered Plaintiff's work responsibilities.

42. On August 6, 2024, Plaintiff emailed Mr. Ward regarding her intent to step down from her Delivery Manager role due to her ongoing mental health struggles. In that email, Plaintiff expressly stated: "Over the past few months, I've realized that the demands of this position have significantly impacted my work-life balance and, consequently, my mental health."

43. Plaintiff's August 6, 2024 email constituted a disclosure of her disability and its impact on her employment.

44. Also on August 6, 2024, Plaintiff met with Charity Hall, Vice President of Operations and overseer of Human Resources.

45. During the August 6, 2024 meeting, Plaintiff complained that she believed she was being treated differently and less favorably than similarly situated white employees with respect to compensation, commission eligibility, and the terms offered to employees transitioning out of

management roles.

46.     Plaintiff specifically raised concerns that white employees who stepped down from management positions had been allowed to retain commission eligibility or commission-bearing compensation structures, while Plaintiff, a Black/African American employee, was being told that similar compensation terms were not available to her.

47.     Ms. Hall summarily concluded that no discrimination had occurred without conducting any meaningful investigation.

48.     Ms. Hall further informed Plaintiff that compensation packages that had previously been offered to other employees when they stepped down from management positions were no longer available to Plaintiff.

49.     At no time during the August 6, 2024 meeting, or at any other time, did Defendant engage in the interactive process required under the ADA, explore potential reasonable accommodations for Plaintiff's disability, or inform Plaintiff that an ADA accommodation process through ADP was available to employees seeking mental health accommodations.

50.     Following the August 6, 2024 meeting, Plaintiff chose to remain in the Delivery Manager role at that time.

51.     Shortly after August 6, 2024, Mr. Ward issued a disciplinary

write-up against Plaintiff, citing her alleged failure to properly communicate before leaving work on August 1, 2024, and asserting that her team had been left unattended.

52.    The write-up was issued despite the fact that Plaintiff experienced a panic attack on August 1, 2024, promptly notified Mr. Ward of her need to take time off, and had pre-approved PTO scheduled for August 2 and August 5, 2024.

53.    Plaintiff alleges that the disciplinary write-up was retaliatory and was issued shortly after she complained to Human Resources about discriminatory treatment and disclosed her disability-related need for relief from the Delivery Manager role.

54.    On or about August 8, 2024, Plaintiff emailed Mr. Ward and Hunter Cone, the owner of The Fountain Group, to inquire about her commission structure and how it would be handled if she transitioned to a different role.

55.    Plaintiff's August 8, 2024 inquiry occurred shortly after her August 6, 2024 complaint to Human Resources that she was being treated differently than similarly situated white employees in connection with transition compensation and commission eligibility.

56. In response to Plaintiff's August 8, 2024 inquiry, Mr. Ward stated that he would need to discuss the matter with Mr. Cone.

57. Plaintiff was subsequently informed that she would lose her commission structure entirely if she transitioned roles. Human Resources was not involved in this decision.

58. By on or about August 14, 2024, Plaintiff had been presented with three options regarding her future employment with Defendant: (1) become a "Personal" recruiter under an individual identified as "Belmont"; (2) work under a supervisor identified as "Jenn"; or (3) remain in her current role as Delivery Manager.

59. All three options were presented to Plaintiff without any meaningful accommodation of her disability or engagement in the ADA interactive process.

60. Plaintiff ultimately chose to remain in the Delivery Manager role.

61. On or about February 19, 2025, Plaintiff again emailed Mr. Ward and Mr. Cone to formally communicate her intention to step down from her Delivery Manager position due to her continuing and ongoing mental health struggles.

62. Plaintiff's February 19, 2025 communication again disclosed her

disability and its impact on her ability to continue in the Delivery Manager role.

63.     On or about February 20, 2025, a meeting was held between Plaintiff, Mr. Ward, Mr. Cone, and Ms. Hall.

64.     During the February 20, 2025 meeting, Plaintiff confirmed that she would not be returning to the Delivery Manager role.

65.     Defendant reiterated that the compensation terms for any alternative role would not change.

66.     Defendant offered Plaintiff a Senior Recruiter position at a base salary of $85,000 per year, with no commission structure whatsoever.

67.     Defendant's offer represented an estimated annual financial loss of approximately $45,000 based on Plaintiff's prior total annual compensation of between approximately $130,000 and $155,000.

68.     The standard compensation model for a Senior Recruiter at Defendant is a base salary of approximately $51,000 plus commission eligibility.

69.     Plaintiff was not given the option to select the standard Senior Recruiter compensation plan.

70.     Instead, Defendant offered Plaintiff an artificially inflated base

salary of $85,000 with no commission eligibility, which eliminated Plaintiff's ability to earn commission income that had historically constituted the substantial majority of her total annual compensation.

71. Defendant's stated justification for denying Plaintiff a commission structure was that Defendant "can't financially go this route anymore" and was "not financially in a place to provide [her] with [her] commission."

72. Defendant's stated financial justification was false, pretextual, and/or selectively applied.

73. At all material times, Defendant maintained commission structures for similarly situated white employees who transitioned out of management roles, including but not limited to Regan McKinney, Sean Lawrence, Dan Beechner, Arnold Suwan, Kevin Hayes, and David Morthom.

74. Upon information and belief, Regan McKinney, Sean Lawrence, Dan Beechner, Arnold Suwan, Kevin Hayes, and David Morthom are white employees who were permitted to retain commission eligibility or commission-bearing compensation structures when stepping down from management positions or transitioning into comparable non-management

roles.

75.    Further evidence of disparate treatment is found in Defendant's own EEOC Position Statement, which identified four former Delivery Managers, all white, who were offered Senior Recruiter positions at $73,087 per year plus commission and bonus eligibility upon stepping down from their management roles.

76.    Defendant's EEOC Position Statement also identified a fifth former Delivery Manager, a Black female, who was offered $67,000 plus commission and bonus eligibility — a lower base salary than the white comparators but still inclusive of commission eligibility.

77.    Plaintiff, a Black female with the longest Delivery Manager tenure of any of the identified comparators, was the only former Delivery Manager offered a Senior Recruiter role with no commission eligibility at all.

78.    Additionally, in a prior demotion of another employee, that employee was permitted to choose her own reporting manager and retain her commission structure — privileges that were not extended to Plaintiff despite Plaintiff's longer tenure, stronger performance record, and multiple promotions.

79.    Defendant characterized Plaintiff's transition as voluntary, but

Plaintiff disputes that characterization.

80.    Plaintiff was constructively demoted because Defendant presented her with no viable options: remain in a leadership role with ongoing and unaddressed disability-related conflict; accept a lower-ranking Senior Recruiter position stripped of the commission structure she had earned for years; or resign entirely.

81.    The conditions under which these choices were presented rendered the purportedly voluntary nature of Plaintiff's transition illusory.

82.    The denial of commission eligibility, the materially inferior compensation terms, and Plaintiff's constructive demotion materially altered the terms, conditions, and privileges of Plaintiff's employment.

83.    Defendant treated Plaintiff less favorably than similarly situated white employees because of Plaintiff's race.

84.    Defendant also retaliated against Plaintiff after she complained on August 6, 2024 that she was being treated differently than similarly situated white employees with respect to compensation, commission eligibility, and transition terms.

85.    The adverse actions taken after Plaintiff's August 6, 2024 complaint included, but were not limited to, the disciplinary write-up issued

shortly after her complaint, the confirmation that she would lose commission eligibility if she transitioned roles, and the ultimate offer of a Senior Recruiter position with no commission eligibility.

86.    On or about March 20, 2025, Plaintiff filed a formal Charge of Discrimination with the United States Equal Employment Opportunity Commission and the Florida Commission on Human Relations, EEOC Charge No. 511-2025-02522, alleging race discrimination, disability discrimination, and retaliation against Defendant.

87.    The filing of Plaintiff's Charge constituted protected activity under Title VII, the ADA, and the FCRA.

88.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered and continues to suffer significant damages, including but not limited to lost wages, lost commission income, lost benefits, lost future earning capacity, emotional distress, mental anguish, humiliation, embarrassment, and damage to her professional reputation.

89.    Plaintiff's anxiety and depression have been further exacerbated by Defendant's unlawful conduct, requiring ongoing therapeutic treatment.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION
## 42 U.S.C. § 2000e et seq.

90.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91.    Plaintiff is a Black/African American female.

92.    At all times material hereto, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

93.    At all times material hereto, Plaintiff was a member of a protected class under Title VII by virtue of her race.

94.    At all times material hereto, Plaintiff was qualified for the positions she held and performed her job duties in a satisfactory or above-satisfactory manner.

95.    Plaintiff received multiple promotions during her employment, was recognized as "Delivery Manager of the Year" in 2021, held the second-longest tenure among her peers, and consistently earned between approximately $130,000 and $155,000 annually in total compensation.

96.    Defendant subjected Plaintiff to materially adverse employment

actions and less favorable terms and conditions of employment because of her race.

97.    Specifically, Defendant denied Plaintiff the commission eligibility and commission-bearing compensation structure afforded to similarly situated white employees who transitioned out of management roles.

98.    Defendant offered Plaintiff a Senior Recruiter position at $85,000 per year with no commission eligibility, even though the standard Senior Recruiter compensation model included a base salary plus commission eligibility.

99.    Defendant's offer materially reduced Plaintiff's earning opportunity and resulted in an estimated annual loss of approximately $45,000.

100.    Similarly situated white employees who transitioned out of management roles were treated more favorably than Plaintiff.

101.    Those white comparators included, but were not limited to, Regan McKinney, Sean Lawrence, Dan Beechner, Arnold Suwan, Kevin Hayes, and David Morthom, who were permitted to retain commission eligibility or commission-bearing compensation structures when stepping

down from management positions or transitioning into comparable non-management roles.

102. Defendant's own EEOC Position Statement further identified four white former Delivery Managers who were offered Senior Recruiter positions at $73,087 per year plus commission and bonus eligibility upon stepping down from management roles.

103. Plaintiff, a Black female with longer Delivery Manager tenure than the identified comparators, was the only former Delivery Manager offered a Senior Recruiter role with no commission eligibility.

104. Defendant's stated reason for denying Plaintiff commission eligibility — that Defendant was not financially able to provide her with a commission structure — was false, pretextual, and/or selectively applied.

105. Defendant's conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

106. Defendant discriminated against Plaintiff because of her race in violation of Title VII.

107. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost commission income, lost earning capacity, emotional

distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, COURTNEY LACROIX, demands judgment against Defendant, THE FOUNTAIN GROUP, LLC, and respectfully requests that this Court:

A.   Declare that Defendant violated Title VII by discriminating against Plaintiff because of her race;

B.   Award Plaintiff back pay, front pay, lost commission income, lost benefits, and other economic damages available under Title VII;

C.   Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D.   Award Plaintiff pre-judgment and post-judgment interest;

E.   Award Plaintiff reasonable attorneys' fees and costs; and

F.   Grant such other and further relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RETALIATION
## 42 U.S.C. § 2000e-3(a)

108. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

109. At all times material hereto, Defendant was an employer within the meaning of Title VII.

110. Title VII prohibits an employer from retaliating against an employee because the employee opposed an employment practice made unlawful by Title VII or because the employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

111. Plaintiff engaged in protected activity under Title VII.

112. On August 6, 2024, Plaintiff complained to Charity Hall, Vice President of Operations and overseer of Human Resources, that she believed she was being treated differently and less favorably than similarly situated white employees with respect to compensation, commission eligibility, and transition terms.

113. Plaintiff also engaged in protected activity by filing a formal

Charge of Discrimination with the EEOC and FCHR on or about March 20, 2025, EEOC Charge No. 511-2025-02522, alleging race discrimination and retaliation.

114. Defendant was aware of Plaintiff's protected activity.

115. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

116. Shortly after Plaintiff's August 6, 2024 complaint to Human Resources, Defendant issued Plaintiff a disciplinary write-up regarding her alleged failure to properly communicate before leaving work on August 1, 2024.

117. Shortly after Plaintiff's August 6, 2024 protected complaint, Defendant informed Plaintiff that she would lose her commission structure entirely if she transitioned roles.

118. Defendant later constructively demoted Plaintiff into a Senior Recruiter role with no commission eligibility, causing an estimated annual financial loss of approximately $45,000.

119. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

120. There is a causal connection between Plaintiff's protected

activity and Defendant's adverse actions.

121. The causal connection is supported by the close temporal proximity between Plaintiff's August 6, 2024 complaint and the subsequent disciplinary write-up, the confirmation that Plaintiff would be denied commission eligibility if she transitioned roles, and the later commission-free Senior Recruiter offer.

122. Defendant's stated reasons for its actions were false, pretextual, and/or retaliatory.

123. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Title VII.

124. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost commission income, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, COURTNEY LACROIX, demands judgment against Defendant, THE FOUNTAIN GROUP, LLC, and respectfully requests that this Court:

A. Declare that Defendant violated Title VII by retaliating against

Plaintiff for engaging in protected activity;

B.     Award Plaintiff back pay, front pay, lost commission income, lost benefits, and other economic damages available under Title VII;

C.     Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D.     Award Plaintiff pre-judgment and post-judgment interest;

E.     Award Plaintiff reasonable attorneys' fees and costs; and

F.     Grant such other and further relief as this Court deems just and proper.

## COUNT III
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**RACE DISCRIMINATION**
**§ 760.10, FLORIDA STATUTES**

125.   Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

126.   Plaintiff is a Black/African American female.

127.   At all times material hereto, Defendant was an employer within the meaning of the Florida Civil Rights Act of 1992, § 760.02(7), Florida

Statutes.

128. At all times material hereto, Plaintiff was a member of a protected class under the FCRA by virtue of her race.

129. At all times material hereto, Plaintiff was qualified for the positions she held and performed her job duties in a satisfactory or above-satisfactory manner.

130. Plaintiff received multiple promotions during her employment, was recognized as "Delivery Manager of the Year" in 2021, held the second-longest tenure among her peers, and consistently earned between approximately $130,000 and $155,000 annually in total compensation.

131. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her race.

132. Specifically, Defendant denied Plaintiff the commission eligibility and commission-bearing compensation structure afforded to similarly situated white employees who transitioned out of management roles.

133. Defendant offered Plaintiff a Senior Recruiter position at $85,000 per year with no commission eligibility, even though the standard Senior

Recruiter compensation model included a base salary plus commission eligibility.

134. Defendant's offer materially reduced Plaintiff's earning opportunity and resulted in an estimated annual loss of approximately $45,000.

135. Similarly situated white employees who transitioned out of management roles were treated more favorably than Plaintiff.

136. Those white comparators included, but were not limited to, Regan McKinney, Sean Lawrence, Dan Beechner, Arnold Suwan, Kevin Hayes, and David Morthom, who were permitted to retain commission eligibility or commission-bearing compensation structures when stepping down from management positions or transitioning into comparable non-management roles.

137. Defendant's own EEOC Position Statement further identified four white former Delivery Managers who were offered Senior Recruiter positions at $73,087 per year plus commission and bonus eligibility upon stepping down from management roles.

138. Plaintiff, a Black female with longer Delivery Manager tenure than the identified comparators, was the only former Delivery Manager

offered a Senior Recruiter role with no commission eligibility.

139. Defendant's stated reason for denying Plaintiff commission eligibility — that Defendant was not financially able to provide her with a commission structure — was false, pretextual, and/or selectively applied.

140. Defendant's conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

141. Defendant discriminated against Plaintiff because of her race in violation of the FCRA.

142. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost commission income, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, COURTNEY LACROIX, demands judgment against Defendant, THE FOUNTAIN GROUP, LLC, and respectfully requests that this Court:

A.   Declare that Defendant violated the FCRA by discriminating against Plaintiff because of her race;

B.   Award Plaintiff back pay, front pay, lost commission income,

lost benefits, and other economic damages available under the

FCRA;

C.      Award Plaintiff compensatory damages, including damages for

emotional distress, humiliation, mental anguish, and other

nonpecuniary losses;

D.      Award Plaintiff pre-judgment and post-judgment interest;

E.      Award Plaintiff reasonable attorneys' fees and costs; and

F.      Grant such other and further relief as this Court deems just and

proper.

### COUNT IV
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
RETALIATION
§ 760.10(7), FLORIDA STATUTES**

135. Plaintiff alleges, realleges, and incorporates by reference

Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

136.   At all times material hereto, Defendant was an employer within

the meaning of the FCRA.

137.   The FCRA prohibits an employer from retaliating against an

employee because the employee opposed an employment practice made

unlawful by the FCRA or because the employee made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under the FCRA.

138. Plaintiff engaged in protected activity under the FCRA.

139. On August 6, 2024, Plaintiff complained to Charity Hall, Vice President of Operations and overseer of Human Resources, that she believed she was being treated differently and less favorably than similarly situated white employees with respect to compensation, commission eligibility, and transition terms.

140. Plaintiff also engaged in protected activity by filing a formal Charge of Discrimination with the EEOC and FCHR on or about March 20, 2025, EEOC Charge No. 511-2025-02522, alleging race discrimination and retaliation.

141. Defendant was aware of Plaintiff's protected activity.

142. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

143. Shortly after Plaintiff's August 6, 2024 complaint to Human Resources, Defendant issued Plaintiff a disciplinary write-up regarding her alleged failure to properly communicate before leaving work on August 1, 2024.

144. Shortly after Plaintiff's August 6, 2024 protected complaint, Defendant informed Plaintiff that she would lose her commission structure entirely if she transitioned roles.

145. Defendant later constructively demoted Plaintiff into a Senior Recruiter role with no commission eligibility, causing an estimated annual financial loss of approximately $45,000.

146. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

147. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

148. The causal connection is supported by the close temporal proximity between Plaintiff's August 6, 2024 complaint and the subsequent disciplinary write-up, the confirmation that Plaintiff would be denied commission eligibility if she transitioned roles, and the later commission-free Senior Recruiter offer.

149. Defendant's stated reasons for its actions were false, pretextual, and/or retaliatory.

150. Defendant retaliated against Plaintiff for engaging in protected activity in violation of the FCRA.

151. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost commission income, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, COURTNEY LACROIX, demands judgment against Defendant, THE FOUNTAIN GROUP, LLC, and respectfully requests that this Court:

A.  Declare that Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B.  Award Plaintiff back pay, front pay, lost commission income, lost benefits, and other economic damages available under the FCRA;

C.  Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D.  Award Plaintiff pre-judgment and post-judgment interest;

E.  Award Plaintiff reasonable attorneys' fees and costs; and

F.  Grant such other and further relief as this Court deems just and

proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 13th day of May 2026.

*/s/ Jason W. Imler, Esq*

Jason W. Imler

Florida Bar No. 1004422

Alberto "Tito" Gonzalez

Florida Bar No. 1037033

**Imler Law**

23110 State Road 54, Unit 407

Lutz, Florida 33549

(P): 813-553-7709

Jason@ImlerLaw.com

Tito@ImlerLaw.com

Ashley@ImlerLaw.com

Tiffany@ImlerLaw.com
